Filed 11/30/21  P. v. Nava CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICARDO NAVA,<br><br>    Defendant and Appellant. | B311543<br><br>(Los Angeles County<br> Super. Ct. No. BA361088) |

APPEAL from an order of the Superior Court of Los Angeles County.  Eleanor J. Hunter, Judge.  Affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Ricardo Nava appeals from the denial of his petition for resentencing pursuant to Penal Code section 1170.95.

We affirm.

## BACKGROUND

In October 2010, defendant was found guilty, along with his codefendant Bryant Rodezno, of the first degree murder of Edwin Catalan, a rival gang member. (Pen. Code, § 187, subd. (a).) Gang and firearm use allegations were found true. Defendant was sentenced to 50 years to life in prison. He received 775 days of presentence custody credits.

In an unpublished decision, we affirmed defendant's and Rodezno's convictions. (*People v. Rodezno* (Dec. 21, 2012, B234852) [nonpub. opn.].) The main evidence against defendant came from the testimony of Stephanie Avilez-Gomez, an accomplice who testified pursuant to a plea agreement. Gomez testified that she, defendant and Rodezno were "White Fence gang members and she was often the driver for gang members committing crimes. The White Fence gang believed that Drowsy [victim Edwin Catalan] from rival gang La Mirada Locos had killed a White Fence gang member, and they wanted to kill Drowsy. . . . Gomez, [Rodezno and defendant] got into Gomez's white Tahoe, and another gang member handed Rodezno a gun wrapped in a sweater. [Rodezno and defendant] told Gomez where to drive and to turn on Westmoreland, in La Mirada Locos gang territory. Then [defendant] told Gomez to stop the car. . . . [Rodezno and defendant] got out and crossed the street, Gomez heard gunshots, [Rodezno and defendant] ran back to the car and got in, [defendant] told Gomez to go (' "[g]o or it's your ass, too" '), and Gomez sped away. [¶] Gomez testified that, as they drove

2

away, [Rodezno] said he shot a guy in the chest three times and tried to shoot him in the head, but the gun jammed or ran out of bullets. [Defendant] said he had kicked the guy in the face. Both were excited and bragging. [Defendant] asked Rodezno if they got the right person, and Rodezno said yes, that it was Drowsy from La Mirada." (*People v. Rodezno, supra*, B234852.)

In 2018, Senate Bill 1437 (2017–2018 Reg. Sess.) was passed. Penal Code section 1170.95 was enacted as part of the legislative changes effected by Senate Bill 1437 and became effective January 1, 2019. (Stats. 2018, ch. 1015, § 4.)

In December 2018, defendant filed in propria persona a form petition for resentencing pursuant to Penal Code section 1170.95. Defendant checked the boxes stating he was convicted on a theory of felony murder or under the natural and probable consequences doctrine, that he was not the killer, not a major participant, did not act with the intent to kill and could not now be convicted of murder under the amended provisions of sections 188 and 189.

The court appointed counsel for defendant. The People filed a response and a supplemental response. Defendant, through counsel, filed a reply.

On January 28, 2021, the court denied defendant's petition in a written order without issuing an order to show cause, finding defendant had failed to state a prima facie case for relief. The court said that in addition to the parties' briefing, it had considered the record of conviction, including the jury instructions and the appellate opinion from the direct appeal. The court explained that defendant's jury had not been instructed with felony murder or the natural and probable consequences doctrine, and since defendant was convicted on a direct aiding

3

and abetting theory, he was ineligible for relief as a matter of law.

Defendant appealed.

Respondent requested we take judicial notice of the jury instructions and verdict form from the superior court file. We grant respondent's request.

## DISCUSSION

In amending the law regarding vicarious murder liability, Senate Bill 1437 created a specific procedure "for retroactive application of its ameliorative provisions. [Penal Code] [s]ection 1170.95 lays out a process for a person *convicted of felony murder or murder under a natural and probable consequences theory* to seek vacatur of his or her conviction and resentencing." (*People v. Gentile* (2020) 10 Cal.5th 830, 853, italics added.)

Defendant concedes in his briefing to this court that the jury was *not* instructed with felony murder or the natural and probable consequences doctrine. The record establishes no such instructions were given and that defendant was convicted of first degree murder on a direct aiding and abetting theory.

Defendant nonetheless contends he is eligible for relief because of confusing language in the aiding and abetting instructions given to the jury, specifically CALCRIM former No. 400. In 2010, defendant's jury was instructed with CALCRIM former No. 400 which contained the following language which has since been removed: "A person is equally guilty of the crime whether he committed it personally or aided and abetted the perpetrator who committed it."

Defendant denies he is making a claim of instructional error that should have been raised on direct appeal. A claim of

4

instructional error is not cognizable in a petition pursuant to Penal Code section 1170.95.

Rather, defendant contends that because the jury was instructed with the "equally guilty" language, it is not possible to conclude as a matter of law that the jury necessarily found him guilty based on his own mental state, as opposed to that of Rodezno, the shooter, as is now required under the amended murder statutes. (Pen. Code, § 188, subd. (a)(3) ["Malice shall not be imputed to a person based solely on his or her participation in a crime."].)

This contention is a nonstarter because Penal Code section 1170.95 applies only to those persons "convicted of felony murder or murder under the natural and probable consequences doctrine." (§ 1170.95, subd. (a); *People v. Gentile*, *supra*, 10 Cal.5th at p. 853.)

Defendant's argument also fails to acknowledge that the Supreme Court in *People v. Johnson* (2016) 62 Cal.4th 600 concluded that CALCRIM No. 401 precluded the jury from being misled. It is undisputed here that defendant's jury was also instructed with CALCRIM No. 401. *Johnson* explained that CALCRIM No. 401 told the jury "that for them to find defendant guilty of murder as an aider and abettor the prosecution must prove that defendant knew [the direct perpetrator] intended to kill [the victim], that he intended to aid and abet [the direct perpetrator] in committing the killing, and that he did in fact aid him in that killing, which would have cleared up any ambiguity arguably presented by CALCRIM former No. 400's reference to principals being 'equally guilty.'" (*Johnson,* at p. 641.)

5

## DISPOSITION

The order denying defendant's resentencing petition is affirmed.

GRIMES, Acting P. J.

WE CONCUR:

STRATTON, J.

HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.